## Case No. 14,103.

### TORRANCE et al. v. AMSDEN et al.

[3 McLean, 509.] [1]

Circuit Court, D. Ohio. Dec., 1844.

ARBITRATION—HEARING—ABSENCE OF WITNESS—SURPRISE—SETTING ASIDE AWARD.

1. A court will set aside an award of arbitrators for misconduct, or where they have decided contrary to law.

[Cited in Lewis v. Chicago, S. F. & C. Ry. Co., 49 Feb. 710.]

[Cited in Anderson v. Imhoff. 34 Neb. 343, 51 N. W. 856; Graham v. Woodal (Ala.) 5 South. 688.]

2. Where, on the hearing. the defendants are surprised by evidence, and, from the unexpected absence of a witness, they are unable to explain the evidence—on this being shown, the arbitrators should have given time to produce the absent witness.

3. And having refused this, the testimony being important, it is ground for setting aside the award.

[This was a suit by Torrance & Daniels against Amsden & Chapman. Heard on motion to set aside an award of arbitration.]

Mr. Parrish and Mr. Beecher, appeared for plaintiffs.

Mr. Boalt and Mr. Wright, for defendants.

LEAVITT. District Judge. After the institution of this suit, and before the trial

[1] [Reported by Hon. John McLean, Circuit Justice.]

term, the parties by their written submission, dated the 3d of May, 1844, agreed to refer the matters in controversy to arbitrators, who were to meet within ninety days from the date of the agreement, on ten days previous notice by either party, and were authorized "to hear all the proofs and allegations of the parties, in relation to the matters in difference, and determine the same as shall be legal and just." It was also agreed, that the award, having been made in writing, should be filed by the successful party, who was authorized to make it a rule of this court, and to cause judgment to be entered thereon, for the amount of damages and costs adjudged to be paid. The arbitrators met in pursuance of this agreement; and, by their award, dated the 20th of July last, report that there is due from the defendants to the plaintiffs, the sum of seven hundred and four dollars and ninety-one cents. The award was filed in this court, on the first day of the present term, accompanied with a notice of a motion for a judgment thereon. And on the same day, the defendants filed their motion for a rule to show cause, why said award should not be set aside. In support of the motion to set aside the award, it is insisted, that the defendants were deprived of an opportunity to present all their testimony at the hearing, by reason of the unexpected absence of an important witness, who was prevented by sickness from attending; and that the arbitrators unreasonably refused to adjourn or postpone the hearing, for the purpose of enabling the defendants to procure the testimony of this witness. It is also insisted, that the defendants were surprised at the hearing, by the unexpected character of the testimony of the witness, Hitchcock; which testimony, it is alleged, the defendants are able to contradict and disprove. Several affidavits have been read, to sustain these allegations, and to make it appear that great injustice has been done to the defendants, by the award of the arbitrators.

To understand fully the matters in controversy between these parties, and the bearings of the affidavits, on the points presented for the decision of the court, it will be necessary to refer briefly to the nature of the claim set up by the plaintiffs, and which it was the object of the present suit to enforce. The facts are substantially as follows: The plaintiffs, being citizens of the state of New York, engaged in the business of manufacturing flour, made advances in money, to the defendants, who are commission merchants in the state of Ohio, for the purchase of wheat, with an express stipulation, embodied in the receipts given for the cash so advanced, that the wheat was to be purchased at specified prices. It appears, that some time after these advances were made, there was a considerable advance in the price of wheat, and that the defendants continued to make purchases at these prices, though above the prices stipulated in the receipts; and, that the wheat so purchased was forwarded to, and received by the plaintiffs, who credited the defendants therewith, at the rates mentioned in the receipts, and not at the rates actually paid by them. And by this mode of crediting the wheat, a considerable balance was found, due to the plaintiffs. It was claimed by the defendants, that one Hitchcock, who was a general agent for the plaintiffs in the purchase and shipment of wheat, was fully apprised that the defendants were purchasing at the advanced prices, and that he recognised and ratified these purchases.

It will be apparent from the foregoing statement, that the important question to be decided by the arbitrators was, whether the agent of the plaintiffs had authorised or assented to the purchases made by the defendants, at prices beyond those stipulated in the receipts. Such authority or assent, on the part of their agent, would be obligatory on the plaintiffs, and would entitle the defendants to a credit at the rates at which the purchases were made. And, on the other hand, without such authority or assent, the plaintiffs could rightfully insist, that the defendants were concluded by the prices specified in the receipts they executed. Do the facts exhibited in the affidavits in support of the motion to set aside the award, prove, that owing to any improper conduct on the part of the arbitrators, the defendants have been prevented from a full investigation of the important fact in issue between the parties, and that injustice has been done to the defendants by the award? It does not satisfactorily appear from the written submission of the parties, whether they intended this reference as at common law, or under the statute of Ohio. It may perhaps be regarded in either aspect. The statute regulating arbitrations does not take away the common law right of parties to arbitrate their controversies. Wright's Rep. 37. It is clear, however, that it was competent for the parties to refer the matters in controversy between them to arbitrators, under the statute. The right of statutory reference is not confined to cases in which no suit is pending. The first section of the statute secures to "all persons who shall have any controversy, or controversies, except when the possession or title of real estate may come in question," the right of reference to arbitrators. It is equally clear that parties litigant in this court, in any case in which the court has jurisdiction, have the same right to refer their controversies, as if the case was pending in a state court. For the present, this will be considered as a proceeding under the statute of Ohio. By the eleventh section of that statute, courts are authorised to set aside any award made under it, if it appear that it has been obtained by fraud, corruption, or undue means; or "that the

arbitrators have misbehaved." There is no pretence in the present case, that the award was the result of fraud, corruption, or any undue means. And viewed as a statutory reference, it cannot be set aside, unless the arbitrators have been guilty of some misbehaviour. The statute does not define what shall constitute such misbehaviour on the part of the arbitrators, as will be sufficient to invalidate their award; but it is clear the award may be liable to objection on this ground, in a case involving no moral turpitude, or wilful misconduct on the part of the arbitrators. If, while acting in perfect good faith, they have mistaken or misapprehended their duty, and injury or injustice have resulted therefrom to either of the parties, it is competent for the court to which the award is returned, to remedy the evil by setting it aside, and opening the controversy for a rehearing. The exception taken to the conduct of the arbitrators in this case, is founded mainly on the allegation, that they unreasonably refused to postpone the hearing, under circumstances in which it is insisted it was plainly their duty to have done so. And if this allegation is sustained, it affords a sufficient ground for the interposition of this court, in the manner sought for by the defendants.

The facts disclosed in the affidavits bearing on this point, will be briefly noticed. The defendant Amsden, in his affidavit, states that he considered Charles P. Davis as a material witness on the trial, and that, previous to the trial, he had obtained from him a promise to attend. He also states, that when the arbitrators and parties met, and before the hearing commenced, he made known the fact to the arbitrators, that Davis was an important witness for him, and that he had reason to expect his attendance before the termination of the trial; and with that expectation, he consented that the hearing should commence in the absence of the expected witness. It appears from the affidavits of others, that when the trial had proceeded for about an hour, the defendant Amsden received the information, by a person who then arrived at the place of trial, that the absent witness would not be able to attend, on account of sickness. And a motion was immediately made for the adjournment of the trial, on the ground of the unavoidable absence of the witness Davis; but the arbitrators overruled this motion, decided that the trial should then proceed, and made up their award, without giving the defendant an opportunity of introducing Davis as a witness. The affidavit of Davis is before the court. He corroborates the statement of Amsden, as to his previous promise to attend the trial, and says it was his purpose to attend, and that sickness alone prevented him from doing so. Davis also sets forth in his affidavit, that during the time the defendants were purchasing wheat for the plaintiffs, he was clerk for

Chapman & Harkness, and that they purchased wheat for Hitchcock as the agent of plaintiffs, with funds received from the defendants, for which the agent allowed Chapman & Harkness the highest market price, and very considerably above the prices stipulated in the receipts, given by the defendants to the plaintiffs. The facts to which Davis would have testified, if present at the trial, show clearly that he was properly regarded as a material witness for the defendants, and that his testimony might have produced a result different from that to which the arbitrators arrived: for it is impossible to resist the conclusion, that the evidence of Hitchcock to the effect that he had not authorised the defendants to pay the advanced prices for wheat, and had not given his assent to the purchases made at such prices, had a controlling influence on the minds of the arbitrators, in making their award. And any testimony contradictory of that given by Hitchcock, on this material point in the controversy between these parties, could not be otherwise than important to the defendants. Though it may not have been sufficient, in the judgment of the arbitrators, to overthrow and set aside the statement of Hitchcock, yet if it would have conduced to that result, it was the right of the defendants to have the benefit of it; and that they were deprived of it, after the use of reasonable diligence to obtain it, and without any default on their part, affords a just ground of complaint. That the arbitrators possessed the power to adjourn from time to time, as they should deem necessary to the investigation of the merits of the controversy between these parties, cannot be disputed. And it was a matter of obvious justice and propriety to exercise this power, if, from any cause not attributable to negligence, either party was prevented, at the time set for the hearing, from producing material testimony. So far as any authorities have been found, bearing upon this point, they sustain the position, that the refusal of the arbitrators to grant a postponement in this case is a good ground for setting aside their award, and opening the case for another investigation. In 1 Am. Com. Law, p. 470, an abstract is given of the case of Coryell v. Coryell, reported in Coxe [1 N. J. Law] 385, in which the court say, "If the arbitrators refuse a request for an adjournment, founded on sufficient reasons, and offered at a proper season, it is a good ground for vacating an award."

It is also urged, as a ground for setting aside the award, that the defendants were surprised at the hearing, by evidence which they could not reasonably anticipate, and which they were not prepared to rebut. It may be questioned whether, viewing this as a mere statutory reference, the award is open to any exceptions, not specified in the statute. But as the allegation of surprise at the trial is closely connected with the refusal

of the arbitrators to grant an adjournment, it will not be improper to notice it. It is laid down in the books, that awards are put upon the same footing as verdicts at law; and the reasons which will induce a court to grant a new trial, will prevail on an application to set aside an award. 1 Am. Com. Law, 464; and the authorities there cited. And in Tidd, Prac. (New Ed.) 841, the doctrine is asserted as applicable to the English courts, that on an affidavit that the party has procured new evidence since the reference, and that there was some surprise at the hearing, against which he could not be required to guard, a new hearing will be granted. Do the facts disclosed in the affidavits bring this case within these principles? The defendant Amsden states in his affidavit, he was not aware, till the trial, that Hitchcock would deny the authority given to purchase wheat at the advanced market prices, and was, therefore, not prepared to prove this fact. He also states that he has been informed since the trial, that he can prove the admissions of Hitchcock, that such authority was given, but was not aware of this testimony before or at the trial. And the affidavits of several witnesses are produced, from whose statements the implication is strong, that the agent Hitchcock was apprised of the prices paid by the defendants for wheat, and gave his sanction to the purchases.

For the purposes of this motion, the facts stated in the affidavits being uncontradicted, are to be taken as true. Amsden asserts positively, that he was authorised by Hitchcock to give the increasing market prices for wheat. He prepared for the trial, under a belief that the agent of the plaintiffs would not deny this fact. His denial, therefore, was a surprise upon him; against which he could not, under the circumstances of the case, be expected to guard; and which, in the judgment of the court, affords an additional reason for giving to these parties another opportunity to investigate the matters in controversy between them.

Courts reluctantly interfere to set aside the verdict of triers, appointed by parties to settle their disputes. They will not do so from the mere fact that these triers have arrived at a different result from that to which the court would have been conducted from the evidence adduced; nor will they ordinarily disturb an award, on the ground that the arbitrators have mistaken the law; but where, in a proper case made, they have refused a postponement; or a party has been surprised, without any default on his side, by unexpected evidence at the hearing; so that the facts of the case have not been fully presented to the arbitrators, and a reasonable ground of suspicion is afforded that ample justice has not been done, it is a matter of the most obvious propriety, to give an opportunity for a re-trial. In the present

case, less repugnance is felt to setting aside this award, from the consideration of the fact, that if the plaintiffs' demand is a just and equitable one, it will not be hazarded by this course, as they will have the amplest opportunity of reasserting and establishing it, on a second trial. On the other hand, if judgment is now entered on the award, the defendants will be forever concluded thereby; and if founded on injustice, the law affords no remedy, as the case cannot be taken by appeal or writ of error to any other tribunal, for trial or revision. The award is, therefore, set aside. And the defendants adjudged to pay the costs of the arbitration.